## MAYFIELD v. CLIFTON.

1. To entitle a husband to the personal property of his wife, he must have reduced it into possession during the coverture.
2. And such possession must be a possession as husband; a possession as administrator, in right of his wife, is insufficient.

THIS was a writ of error, sued out by Thomas Mayfield, guardian of Nancy Murphy, to reverse the decision of the Judge of the County Court of Madison county, made at June term, 1829, on the hearing of a petition filed by Mayfield in that Court, against Thomas Clifton. Mayfield in his petition, represented that Thomas Murphy of Madison county, died in 1815, possessed of negroes and other personal propery; that his estate was unembarrassed and free of debt; that he left his widow, Frances J. Murphy, and two infant children; Nancy, of whom he, the

petitioner, was guardian, and John of whom Clifton was guardian; that the widow was appointed administratrix of the estate, by the County Court of Madison, and shortly afterwards intermarried with Clifton, and that she died in 1827. Whereupon, he prayed a legal distribution of the estate.

The cause was submitted to the decision of the Judge of the County Court, under an agreed statement of facts, which was in the following words: "We agree that the property referred to, belonged to Thomas Murphy, who died at the time stated in the petition, leaving his widow, Frances J. Murphy, and two children named in the petition; that the said widow administered upon the estate of said Murphy, and after obtaining the grant of administration, intermarried with Thomas Clifton; that the property was in possession of the said Frances from the death of the said Murphy till her second marriage, and from that event, in the possession of herself and the said Clifton till her death, which occurred at the time mentioned in the petition, and that no distribution of said property was ever made between the said Frances in her lifetime and the children of Murphy." Upon this statement of the facts, the County Court decreed that the property should be divided between the children of Murphy and Thomas Clifton, it being the opinion of the Court that Clifton was entitled to the distributive share of his deceased wife, although there had been no distribution made in the lifetime of the wife. Mayfield prosecuted his writ of error to reverse this decree of the County Court.

Hopkins, for the plaintiff in error. It is a well settled principle of law, that unless the husband reduce the personal property of the wife into possession during coverture, he can acquire no right to it. I understand the Court below to have gone on the ground, that the husband here, had possession; but his possession was as administrator. As the estate was never divided, if the doctrine to be maintained in support of the decree be correct, then he held possession of the whole estate in his own right. A change of the character of possession, could only take place by a division, otherwise he holds the whole as administrator, and such division could only be made by an order of Court; he could not divide for himself. If the doctrine be correct, the County Court has nothing to do but to distribute to the representatives. And suppose the property had remained thus, until the children had be-

come of age, how could application for distribution be made, but by himself and wife; it could be made in no other way. No such application has been made, and if it had been, it has not been decided on. In all personal property and choses in action of the wife, the husband acquires no rights until reduced into possession during coveture. That he has never done here, and the right must now be denied him. He could claim it only in right of, and jointly with his wife; he had his petition, or action in her name and right, but the action of husband and wife is now gone, and he never can claim in his own.[a] In *Taliaferro's* case, Judge Roane referred to a statute of Virginia, but shews from Blackstone, that the wife's property must be reduced into possession *quasi* husband. The property of the wife must be administered upon, and all administrators must distribute for the benefit of creditors and legatees; but here, the husband has no right under our statute to the administration of the property in question; that right died with her.[b]

McCLUNG, for defendant in error. All the English statutes read, do not alter the common law, so that it applies here. The statute of 29th Charles II. chapter 2, called the statute of distribution, was partly remedial, and did not change the common law. It was intended to give the husband the means of getting possession; but it is immaterial how he gets possession, if it be not tortiously. That possession we have now, and we are not seeking a remedy, we have the property, and we want no remedy. But the opposite party do, to dispossess us.[c] In *Whitaker v. Whitaker*,[d] the common law principle is laid down. The New York statute is similar to that of 29th Charles, and the principle decided, is that it is immaterial how he gets possession, if it be not obtained tortiously. A case in 2 Connecticut Reports,[e] sustains the same doctrine. It is then immaterial whether distribution be made or not; he has a chose in action in possession. If distribution had been made, it would have been of a third of the property to him in right of his wife. It is not the same as if she had been entitled to a devise. The law devises this to her, and her assent was not necessary; and the possession of herself and husband conjointly, made it complete.[f] The property has all along been in possession of Clifton, of which he was by law entitled to a third; that third is now in his possession; he has only to retain.

48

JANUARY 1831.

Mayfield
v.
Clifton.

[a] 2 Call's R. 389-.90--93.

[b] 1 Black. Com. 330, 399. Clancy Rights Mar. W. 11, 12. 4 Bac. Abr. 446. Toll. Ex 220.

[c] Clancy on Mar. Wo. 111.

[d] John. Rep. 111--18,-19.

[e] Page 564.

[f] 2 P. Wms R 137--39. 2 Com. Dig. Baron and Fem. E. 3. Coke Litt. 351. a.

JANUARY 1831.

Mayfield
v.
Clifton.

Hopkins, in conclusion. It is very true that Clifton is in possession of the whole estate, but his possession is undefined; it is true the law gives the wife a third, but it does not identify what particular slaves she shall have; the County Court must do that. In the case cited from 6 Johnson, the right was sustained on the statute alone; and the case from Connecticut went upon a distinction in the English books quite different from ours. There, the husband can recover property accruing to his wife during coverture, in his own name, without joining his wife; a distinction which has not been recognised in Virginia, where he must join his wife, as here; and as he cannot now do that, his right is gone. When the wife dies, her property is to be administered in the same manner as that of other women. Clifton has no right to the administration of her property, as administratrix of a former husband, and it must be distributed as the property of other persons to her children.

By LIPSCOMB, Chief Justice. If Clifton had died, his wife living, would her share of her first husband's property, under the circumstances stated, have survived to her, or would it have gone to the personal representatives of her last husband? I have stated the proposition in this way, for the purpose of testing the character of the possession held by the defendant, of the property in which his wife had an interest to a certain extent, being undivided, and not separated from the rights of her children. I believe the case of *Johnson, Administrator of Ramsay, v. Wren,*[a] would furnish quite a satisfactory answer. In that case, Ramsay had intermarried with the wife of the defendant, and she at the time of the marriage, was the legal owner of the slaves sued for, but she was not in possession. She had hired them for a term of years to her brother with whom she lived, and Ramsay was the overseer of her brother, and had charge of the slaves as overseer. He died shortly after his marriage, and before the term for which the slaves had been hired, had expired, without having exercised any other control than that of overseer over them; the same station he occupied before and at the time of his marriage. This Court, on the authority of *Wallace, et ux. v. Taliafero, et ux.*[a] and several other cases equally in point, after much deliberation, ruled that Ramsay had never had the possession of the slaves as husband, but up to the time of his death, his

*a* Ante 172.

*a* 2 Call's R. 447.

possession had been as overseer, and not as owner; and that at his death, the right of his wife had survived to her, and that it did not go to his personal representatives.

The case of *Wallace, et ux. v. Taliafero, et ux.* reported in Call, was decisive.   The husband, in conjunction with his executor, had held possession of the personal property bequeathed to his wife, and it was ruled that his possession was as executor and not as husband.   The case of *Baker v. Hall*,[a] is as strong.   Hall being an executor and trustee of the will of Gregory Wright, married Elizabeth Baker, one of the residuary legatees, and had possession of her personal property, and disposed of some of it and died, leaving his wife.   The question was, whether his possession was such as would transmit his wife's property at his death, to his personal representative, or did the property remain in action and survive to the wife. The master of the Rolls said that the husband must be considered as having entered into possession as executor and trustee, and not as husband.   Both these cases conclusively sustain the position, that the possession must be clearly and unequivocally as husband, and not in any other right.   And they present so striking an analogy in all their features to the case under consideration, that we are brought irresistably to the conclusion, that whatever kind of possession Clifton had, it was as administrator in right of his wife, and not as husband and owner; and had he died, his wife living, there could have been no doubt that the right to her share of her first husband's property would have survived to her, and not have gone to the personal representatives of her last husband.   Our statute of distribution had given her one third of her deceased husband's property, but it had not designated the particular property composing that one third, and until it had been set apart to her as a distributee, her share as well as the shares of her two children, were in action and not in possession.

Clancy, in his excellent treatise on the rights of married women,[b] when discussing the rights of the wife as survivor, lays down the rule to be thus: that "whenever the husband may bring suit, either jointly, or in his own name at his election, the action would survive to the wife. But if he is compelled to sue in his own name separately, the action goes to his personal representative."   And the case is put by the same author, of a suit having been brought in trover by husband and wife jointly, for a chattle lost by the wife, *dum sola,* and converted after cover-

JANUARY 1831

Mayfield
v.
Clifton.

a 12 Ves. 497.

b Page 8 & 9.

ture.   After verdict, on a motion in arrest of judgment, on the ground that the suit should have been in the name

of the husband alone, the judges were equally divided. But in a subsequent case, the Court were unanimous that the suit might be brought, either in their joint names or in the name of the husband alone.

All the right that Clifton could exercise over the property of the estate of Murphy, was exerted as administrator in right of his wife, and his possession of her individual share was not as husband, but as administrator.   If it had become necessary to sue for any of it, in consequence of its having been lost, he could not have sustained the action in his own name, but he would have been compelled to have brought the suit in the joint names of himself and wife.

It is contended in support of the order of the Judge of the County Court, that although the husband had never reduced his wife's share of the estate into his possession, *quasi* husband, yet that he is entitled to sue for it as her representative, by the rule of the common law.   This is not believed to be the correct rule.   In the early period of English history, little regard was paid to chattel interests, and it was a long time before the personal property of an intestate, became the subject of legislation.   It was not considered of much value, the great source of revenue and wealth, in those times growing out of those feudal tenures, the little personal property that a man died possessed of, if he made no disposition of it by will, went either to his lord paramount, or to the church, to be disposed of for the good of his soul in pious purposes.   So long as a blind submission and confidence prevailed, as to the power of the clergy in this life, and in the efficacy of their prayers in redeeming the souls of the departed, no serious objection was made to this mode of disposing of the personal property.   Indeed it would have had but little effect, and would have been looked on in those times as heinous impiety in the surviving relations, to attempt to divert the personal property of the deceased, to any other purpose.   The separation of the chattel from the possession of the owner, was then too a case of very rare occurrence.   But as commerce increased, personal property became an object of much greater importance; it then composed in many instances, *the mass of very large fortunes.* The public mind had somewhat shaken off the influence of religious superstition.   The statute of 31st Edward III,

was the first step in a system of legislation, that finally
resulted in their statute of distribution of 29th Charles
II, securing to the relations of an intestate, the enjoyment
of the personal property. We have no authority for be-
lieving that prior to that statute, any exception was made
by the canons of the church, or by the rules of the com-
mon law, in favor of the husband, who had not reduced
his wife's personal property into possession during cover-
ture. It must however be admitted, that elementary au-
thors have not treated the subject with very minute care.
But whoever held the administration, whether he was the
lord paramount, or the prebendary of the church, held the
personal property after the administration, to his own use.

The language of Mr Clancy is, "that since the statute
of 31st Edward III, chapter 11, by which it is enacted,
'that in case where a man dieth intestate, the ordinaries
shall depute the next and most lawful friends of the de-
ceased person intestate, to administer his goods;' it has
been held that administration of the wife's goods belongs
of right to the husband; and as by the statute of distribu-
tions, it is provided that nothing contained in it shall be
construed to extend to estates of *femes covert*, that shall
die intestate, but that their husbands may demand and
have administration of the rights and credits, and other
personal estates, and recover and enjoy the same, as they
might have done by law, before the making of this act;
it follows that the husband is now entitled for his own
benefit, to the chattels real of his deceased wife, and to all
things in action, trust, and every other personal property,
whether actually vested in him and reduced into posses-
sion, or contingent, or recoverable only by action or suit."

From this quotation, it is very clear that the learned
author considered the right as given by the statute of Ed-
ward III, and confirmed by the statute of distribution; if
it had been otherwise, he would not have given the enact-
ment of the first statute, as the period of time when this
rule first prevailed, that the husband should succeed to the
choses and chattels in action of his deceased wife. Be-
fore the statute of distribution, as I have before remarked,
all the personal property of the intestate, vested in the
person to whom administration was granted, and the sta-
tute of the 31st of Edward III, had previously directed
to whom the ordinaries should grant the administration.
The exception in favor of the husband in the distribution
of his deceased wife's property, not reduced to actual pos-

JANUARY 1831 session, relates to the previous statute, and not to the common law. Many of the profession have, I doubt not, formed an erroneous opinion of the origin of the husband's right, by not attending sufficiently to the meaning of the expression, "as he might by law have done," used as the exception to the statute of distribution. If this exception had not been made, the wife's personal property in action, at her death, would have been distributed to her relatives, and would have defeated the construction that the Courts had given the statute of Edward III. With due deference to the great learning of Judge Spencer, it seems to me that in the case in 6 Johnson, he did not attend to the true origin of the husband's right, to succeed on the death of his wife, to her personal property in action; if he had done so, he never could have ascribed to it a common law origin. He has fallen the more readily into this error, from the circumstance of the statute of the 29th Charles II, being in force in New York; none of the English statutes are in force in this State, and our own statute of distribution essentially differs from theirs. If it was therefore admitted, that under our own statute, the husband would be entitled to the administration, it would not as in England, confer on him a right to the property, but it would be distributed to the nearest kin in equal degrees. If the husband has incurred and paid debts contracted by his wife, *dum sola*, it is his misfortune that he did not, whilst it was in his power, reduce her personal property into possession. I am not prepared to say, that in such a case, he would be wholly remediless. It is possible that he could find relief by resorting to a Court of Chancery. I incline to the opinion, that chancery would charge the property of the wife, not in possession during coverture, to the extent of her debts *dum sola*, paid by her husband during coverture, if there was a deficiency of property in possession to reimburse the husband. We are not however called on to decide this question. We are of opinion, that the possession of Clifton, the defendant in this case, was as administrator, and that he is not entitled to the share that his deceased wife would have received, if the distribution had been made during her life. The order and judgment of the County Court, must therefore be reversed and the cause remanded.

Mayfield
v.
Clifton.

Decree reversed and remanded.