# Wade *v.* Grimes.

Where a testator bequeathed to his wife the management of his estate during widow-hood, and a child's inheritance of the same in the event of a second marriage, it was held to give a vested legacy upon the death of testator.

Legacies and distributive shares of intestates' estates are choses in action.

Where the right is joint between legatees or distributees, the property retains its character of a chose in action, until division or partition.

There is a distinction between the rights of the husband to the choses of the wife to which she had title at the time of the marriage, and to those which accrued to her afterwards. In the former instance, the husband cannot sue for them without joining the wife, and if they be not reduced to possession during the intermarriage, the right goes to the wife, if she survive.

Where the testator, by his will, directed that his property, real and personal, should be kept together as common stock until the children married or arrived at the age of majority, under the management of the wife, who was to have a child's part, but if she married again, then she was entitled to call for a division. She married a second husband, who did not reduce the legacy to possession during coverture. After the death of the second husband, the widow married again, and the third husband surviving his wife was held to be entitled to her share of the personal property in right of his wife.

Where the husband survives the wife, he is entitled to her choses in actio n.

IN ERROR from the probate court of the county of Yazoo.

On the 15th of January, 1835, James Kirk made and published his last will and testament, in which he directed that if his wife should survive him and marry again, she should be entitled to share his estate in the same proportion as one of his children. The will was in the following language:

"It is my will that my estate, both real and personal, shall remain in common stock until my oldest child shall marry or become of age; then it shall be the duty of the probate court to appoint three suitable persons to value the estate and give that child an equal division of said estate, and so on until the youngest child shall become of age. So long as my . wife Livisa Kirk

remains a widow, she shall be empowered to hire overseers and carry on the business of the estate, and to educate my children. In the event of her marrying, she shall be entitled to an equal division of my estate, to be called as one of the children. It shall further be the duty of the probate court to appoint three suitable persons to make an inventory of my estate, and make a record of the same."

Kirk died, and his wife, Livisa, intermarried with one Carter, who died without any steps having been taken to have the share of said Livisa, under said will, set apart or allotted to him. After the death of Carter, his wife Livisa intermarried with Wade, the plaintiff in error. At the September term, 1840, of probate court of Yazoo county, Wade, by bill or petition, setting forth the foregoing facts, prayed for an allotment to him, in right of his wife, of her portion of the personal estate of said Kirk, under the will. The court, in pursuance of the prayer of the petition, decreed that the interest of said Livisa in said personal estate, being one-fifth part of it, should be set apart and allotted to said Wade.

The commissioners, appointed to make this allotment, reported at the November term, 1840, of said court, and their report, which was a part of the record, showed the specific chattels which they allotted to Wade. At the March term, 1841, of the court, the defendant in error, as administrator *de bonis non, cum testamento annexo,* of said James Kirk, exhibited his bill against said Wade, in which, after reciting the foregoing facts, he charged that there was manifest error on the face of said decree, for which the same should be reviewed and set aside. Wade filed his answer to this bill, admitting the truth of its recitals of facts; admitting also that it was, as charged in said bill, apparent on the face of the decree, that, after the death of said Kirk, the said Livisa intermarried with said Carter, and that, under said will, she became, on her intermarriage with said Carter, entitled to a distributive share of Kirk's estate, and that said Carter died without having said share allotted to him. But the answer insisted that these facts do not show said decree to be, in law, erroneous.

At the April term, 1841, of the court, it was decreed that the former decree, allotting to Wade a distributive share of Kirk's

personal estate, should be reversed and set aside on account of said apparent errors.

. The reversal of this last decree was sought by Wade, on the ground that the first decree in his favor was correct, and that the distributive share of .Kirk's personal estate, bequeathed to said Livisa on her marrying again, belonged not to the estate of Carter, with whom she intermarried after Kirk's death, but to Wade, who subsequently became her husband. Wade survived his wife, and did not institute this proceeding until after her death.

WILKINSON, for plaintiff in error.

· That the "property in action" of the wife, which had accrued to her *dum sola*, which had not been reduced into possession by the husband during the marriage, and over which he had exercised no act of ownership, pass to her, and not to his representatives, in the event of her surviving him, we had supposed to be a *truism* of the science too often and too plainly asserted to be open to debate. See Bacon's Abridgement, (by Gwillim,) title Baron and Feme, vol. 1, p. 480; Toller's Law of Executors, p. 219, 3d Am. edition; Coke Litt. 351; 2 Black. Com. 436; Tucker's Com. 316, 317; Clancy's Rights of Woman, 3; Roper on Husband and Wife, vol. 1, part 2, p. 204; 5 J. C. R. 196; 4 H. and M. 452. But it is supposed by the counsel for the appellees, that this principle has recently been shaken by American decisions, and that the whole doctrine has been overthrown by the decisions of this court. Attentively considered, however, there is little if any thing in these cases in conflict with the position I am attempting to support, and in each of them there was either an assignment of the property, or some other equally decisive act of ownership exercised by the husband; or else it was reduced into actual or constructive possession by him during the coverture. In the case in 1 Howard, 558, the husband had possession of the property, and exercised in regard to it acts of ownership ,deemed by the court unequivocal in their purport and meaning, and upon this view of it the case was decided.

The facts were similar in the case in 3 Howard, 307. There also there was actual possession and ownership by the husband during coverture. Nor does the case of Lowry and Houston, re-

ported in the same volume, p. 394, settle any thing more, for *there* there was an assignment of the legacy by the husband during the coverture, which has always constituted an admitted exception to the rule. It is admitted that, from some expressions which are reported as having fallen from the court in pronouncing its opinion in this case, there is probably a disposition in the minds of the court to push the doctrine yet further, and the case in 2 Conn. Rep. 564, and 3 Dessaus. are adduced in support of the views there intimated. But the decision in the Connecticut case expressly recognizes a difference between a right accruing to the wife *before,* and one accruing after coverture, giving the absolute property to the husband's representatives in the latter, and not in the former case. And it may be remarked that this is one of the features of the case of Lowry and Houston, "the right to the fund accrued to the wife during coverture." Such also are the cases in Dessaus. though the statute of South Carolina upon this subject must of itself have impelled the decisions, without the aid of principle. Whether this distinction so recently taken be tenable or not it is useless to debate, as it is believed that no case has yet been reported which attempts a further advance of the doctrine in favor of the husband's representatives. As to the *dictum* in 4 How. 214, it is admitted to be law, *with the above qualification,* and this was probably the meaning of the court that pronounced it, as the cases referred to by the court in support of it are all distinguished by the one or the other, or both of these features—possession or disposition of the property by the husband during marriage, *or* the right accruing to the wife *after* marriage.

If the distinction I have taken be tenable, it is decisive of this case, as will be seen from the record, and the first decree of the probate court will be permitted to stand.

R. S. and J. HOLT, for defendant in error.

The distributive share, if it may be properly so called, given by Kirk to his wife Livisa, was given upon condition that she married again. She took it, therefore, by purchase, and not by inheritance, and as it did not vest until her second marriage had been consummated, it accrued to her *during her coverture with Carter.* It was a legacy given to her in the ordinary way, without

Wade *v.* Grimes.

any attempt to restrict it to her sole and separate use. The extent and character of the interest acquired by Carter in this legacy is the sole question in the case. If he acquired an absolute interest, then the first decree of the court, allotting the legacy to Wade, was erroneous; if, on the other hand, his interest was qualified, and survived to the wife in the event she outlived him, then the last decree of the probate court should be reversed.

There may be found some English decisions to the effect, that the *choses in action* of the wife, if not reduced to possession by the husband during the coverture, will survive to her if she out-live him; but this doctrine, so far as it applies to *choses in action* accruing during the coverture, is not maintainable. The husband in such case may sue alone, and need not join the wife, which proves conclusively that his interest is absolute and several, not qualified, or joint with his wife. 4 Howard, 214. This question is examined with great clearness and ability in Griswold *v.* Penniman, &c. 2 Conn. Rep. 564–5–6, where it is held, that the choses in action accruing to the wife during coverture, although not reduced to possession by the husband, belong to him absolutely, and in the event of his being survived by her go to his executor or administrator, the court remarking that the doctrine to the contrary, laid down by Lord Hardwicke in Garforth *v.* Bradley, 2 Ves. 676, is contradictory to the whole current of authorities. Cary *v.* Taylor, 2 Verm. 302, seems to fortify the position assumed in Griswold *v.* Penniman, &c.

But it is believed that the share in Kirk's estate which accrued to his widow during her coverture with Carter was not a *chose in action*. The estate consisted of personal chattels, slaves, stock, &c., as shown by the allotment, the right to which draws after it the possession, and does not come within the popular or professional meaning of a chose in action.

A chose in action is a right arising from a contract, express or implied, as money due on simple contract or by specialty, damages for breach of contract, &c. Clancy R. M. Women, 3, 4; 2 Kent, 135.

All property in action depends entirely on contracts, either express or implied, which are the only means of acquiring a *chose in action.* 2 Black. Com. 397.

LAW LIBRARY HARVARD

In Cable *v.* Martin and Bell, 1 Howard, 564, it is very clearly intimated that a distributive share of personal chattels accruing to the wife, is not a *chose in action*, and it is there held that it is such an interest as will vest absolutely in the husband.

In Lowry *v.* Houston, 3 Howard, 394, it was held that the husband is entitled to a vested legacy of the wife, although not reduced into possession during coverture. The legacy consisted of slaves, as did the legacy of a child's part to Mrs. Livisa Kirk, as shown by the allotment. In both cases the interest in the chattels claimed on behalf of the husband accrued during the coverture. The court say, "such property cannot be considered in light of the wife's *choses in action*."

In Griswold *v.* Penniman, 2 Conn. R. 564–5, cited with approbation in Lowry *v.* Houston, it was determined upon a full review of the authorities, that a share of personal estate accruing in right of the wife during coverture, vests even before distribution made in the husband absolutely, and does not in the event of his prior death survive to her. And the court say that such a share of personal chattels is not a *chose in action*.

The doctrine is universal that property in specific chattels draws after it the possession in law; while a mere right to a sum of money before payment is not accompanied by either a legal or actual possession of any thing. "It is something incorporeal," says the court, in Cable *v.* Martin and Bell, "not attached to any particular thing to the exclusion of others of the same kind." Certainly this definition of a *chose in action* falls far short of embracing the right of Mrs. Kirk to a share of Kirk's estate on her intermarriage with Carter. That share was an interest in certain specific chattels, to the exclusion of other chattels of the same kind. And according to the universal principle adverted to, it vested absolutely in the husband, and the right in legal contemplation drew after it the possession.

The error complained of in the bill of review was apparent on the face of the decree. Plaintiff in error in his response to the bill, admits that the facts which it is insisted make the error of the decree manifest, appear upon its face, but he urges that the law arising on these facts supports the decree. This is the only ques-

Wade *v.* Grimes.

tion presented, and the one which both parties desire should be fairly met and decided.

MILES in reply.

To sustain a bill of review, for error apparent upon the face of the decree, it must be shown that the facts admitted by the pleadings or the recitals in the decree itself exhibit a manifest and palpable misapplication of legal principles.   O'Brien *v.* Connor, 2 Ball & Bea. Rep. 176 ;  Millish *v.* Williams, 1 Vernon's Rep. 166; Webb *v.* Pell, 3 Paige's Rep. 368, 371 ;  Dougherty *v.* Morgan's Ex'rs, 6 Monroe's Rep. 505; Wiser *v.* Blackley *et al.*, 2 John. Cha. Rep. 488; 2 Mad. Cha. Prac. 536.

Now it is insisted, that the facts admitted by the pleadings and recital in the final decree rendered by the probate court do not furnish evidence of a mis-application of the law.   By the will of James Kirk, Mrs. Wade was entitled to one fourth part of his estate, upon the contingency of her marriage.   She did marry Carter, who shortly thereafter died without ever having made an effort to reduce this property into possession.   After his death she married Wade, the plaintiff in error.

I need not argue that Mrs. Wade, had she chosen so to do, was at liberty to abandon the bequest contained in the will, and take in lieu thereof her dowable portion of the estate.   Her election, it is plain by the record, was not made either before or during her marriage with Carter.   It is not shown by the most equivocal circumstance that Carter ever had the property in possession, or that he ever exercised any acts of ownership or control over it.   The election of Mrs. Wade not having been made until after her intermarriage with her present husband, she of course had no title to the property in controversy during or before her marriage with Carter.   Her title to the property being dependent upon her acceptance or rejection of the provisions of the will; and she not having accepted the specific bequest in lieu of dower until after her former husband's (Carter's) death, he took no interest in this property by the marriage.   See Phil. Ala. Dig. 152; 2 McCord's Ch. Rep. 433; 1 Rand. 351; 2 Dev. Eq. 405 ; 2 Dev. & Batt. Eq. Rep. 272 ; 10 Vesey 578; Iredell's Rep. 61, 286.

Upon this view of the case it is plain beyond controversy that

the probate court could not have done otherwise than decree the property to Wade. The last decree of the probate court, which reversed the first, should therefore in its turn be reversed, and the first decree be permitted to stand.

Mr. Justice CLAYTON delivered the opinion of the court.

The facts present the case of a woman who was married three times. By the will of her first husband, Kirk, she was entitled to a share of personal estate. Her second husband, Carter, does not appear to have ever concerned with it in any way. The third husband, Wade, survived the wife, and after her death filed his petition in the probate court against Grimes, the defendant, who was the administrator with the will annexed of Kirk, for her portion of Kirk's estate. The claim was resisted by the defendant, who opposed the right of Carter, the second husband, to that of Wade.

We have first to enquire what was the nature of the estate, taken by the feme under the will of Kirk, the first husband. The will directs "that his estate, real and personal, shall remain in common stock until his oldest child shall marry or come of age, then it shall be the duty of the probate court to appoint three suitable persons to value the estate, and give that child an equal division, and so on until the youngest child shall become of age.' So long as his wife remains a widow, she is to carry on the business of the estate, and to educate his children; in the event of her marrying she is to be entitled to an equal division of his estate, to be called for as one of the children." The intention of the testator was to put his wife in all respects upon the same footing with his children, and to treat her as one of them in point of interest in his estate. It was to be held in common for their common good, and upon her marriage the wife was entitled to call for a division. She might have renounced the will in six months, but not having done so, she is subject to its provisions. The will then passed an interest, which became vested on the death of the testator. It was an estate then vested in interest, but the right to a division and of separate enjoyment was postponed to an after period. We cannot distinguish this will in principle from that of Pressler, in the case of Scott *v.* James, 3 Howard, page 307, which was held " to give

Wade *v.* Grimes.

a vested legacy to be divided *in futuro.*" This was a right, then, which subsisted in Mrs. Kirk at the time of her marriage with Carter; not one which accrued during her coverture with him.

We have thus determined the nature of the wife's interest under the will, and shown that it accrued before her second marriage. The next enquiry is as to the rights of the respective subsequent husbands. The general rule of law is, that unless the husband reduce the wife's choses in action to possession during the coverture, they survive to her, if she be the longest liver. Coke Lit. 351; Roper on Husband and Wife, 204–5; Clancy, 4. It has been sometimes doubted whether legacies and distributive shares of intestates' estates come properly under the head of choses in action; but nearly all the reported cases assign to them that character as much as debts, or other contracts. Roper, 204–5; Clancy, 109; Toller on Executors, 220; 1 Dane's Ab. 342; Blount *v.* Bestland, 5 Ves. 516; Hackney *v.* Williams, 6 Yerger; Spann *v.* Stewart, 1 Hill, 332; Revel *v.* Revel, 2 Dev. & Batt. 272; Mayfield *v.* Clifton, 3 Stew. 375; 2 Hill, 650; 4 Hen. & Munf. 452. And where the right is a joint one between *legatees* or *distributees*, the property retains its character of a chose until division or partition. 2 Hill, 650; Spann *v.* Stewart, 1 Hill, 332; Gregory *v.* Marks, 1 Rand. 355; Hackney *v.* Williams, 6 Yerger; Elms *v.* Hughes, 3 Dess. 155; 1 Iredell, 61–288; Parks *v.* Cushman, 9 Vermont, 324. The only exception to this rule is, that if the division is by the will conferring the legacy postponed to a future day, the husband's right shall not be prejudiced, if he claim the property as his own, and exercise all the ownership over it of which it is susceptible. Scott *v.* James, 3 How. 313.

A distinction is drawn in many cases between the rights of the husband to those choses of the wife to which she had title at the time of the marriage, and to those which accrued to her afterwards. In the former instance it is held, that the husband cannot sue for them without joining the wife, and if they be not reduced to possession during the intermarriage, the right goes to the wife, if she survive. In the latter instance it is held, that the husband may sue in his own name without joining her, and that the title vests absolutely in him without actual reduction to possession. Toller Ex. 219; Griswold *v.* Penniman, 2 Conn.; Banks *v.* Marksbury, 3

37*.

Littell; Armstrong *v.* Simonton, 2 Taylor, 266; Wilkinson *v.* Perrin, 7 Monroe, 216; Magruder & Nichols *v.* Stewart, 4 How. 204. In many of the cases this distinction is not adhered to or regarded, and in either case the right is held to survive to the wife. Carr *v.* Taylor, 10 Ves.; Hunter *v.* Hallett, 1 Edwards, 389; Revel *v.* Revel, 2 Dev. & Batt. 1 Iredell, 288; Wallace and wife *v.* Taliaferro, 2 Call; 1 Ran. 355; 3 Stewart, 172–375; Lodge *v.* Hamilton, 2 Serg. & Rawle. But we consider the distinction to be well founded, and it was acted upon by this court in the case cited from 4th Howard.

The husband's assignment for valuable consideration of the wife's present interest in her choses in action, divests her title, and is equivalent to reducing them to possession. Cassell *v.* Carroll, 11 Wheaton; Schuyler *v.* Hoyle, 5 Johns. Ch. 196; Lowry *v.* Houston, 3 How. 396. It may be different as to reversionary interest; but this point we are not called on to decide. See Homsby *v.* Lee, 2 Mad. Rep.; Purdew *v.* Jackson, 1 Russell; and Honner *v.* Morton, 3 Russell, 65.

These principles all have a direct bearing upon the case before us. The property in dispute was a chose in action; the right accrued before the marriage with Carter; the interest was joint; there was no division or partition; no assignment or sale of it by him, nor any other act upon his part evincing an assertion of title. We are of opinion, therefore, that the rights of his wife stood after his death in the same situation as at the time of their marriage; and at her death that they passed to Wade, the third husband, as her survivor.

A recent case which searches into this subject with great astuteness, and criticises many of the decisions with much boldness and freedom, rests the doctrine upon a new ground. It regards the husband as not invested with the title of the wife to her choses in action, but as the recipient of her power and capacity to dispose of them. If he exercise the power by assignment, by release, by actually taking them into possession, he thereby acquires or transfers the title. If he dies without the exercise of the power, the wife acquires not a new title, but is restored to her old one, connected with the capacity to use it, which was suspended during the coverture. He is the depository of her power, not of her title;

Wade *v.* Grimes.

and if he do not exercise the power, by his death it is gone.   Siter *v.* Jordon, 4 Rawle, 469.   This doctrine does not vary the result of this case, but the reasoning is different, and seems to be recommended by its extreme simplicity and clearness.

It is said in the brief of the counsel for the appellee, that the law in this case has already been settled by this court: and the cases of Cable *v.* Bell and Martin, 1 Howard, and Lowry *v.* Houston, 3 How. are relied on in support of the position.   A careful review and examination of these cases will show that the point presented in this record has not been decided by this court.   This review we will proceed to make, with the single preliminary remark, that however general the expressions used in those cases may be, they are to be confined to the subject matter before the court, and to the facts of the cause under consideration.

In the case of Cable *v.* Bell and Martin, 1 Howard, the husband survived; and it is held by all the authorities, without one exception, that where the husband survives, the right of the wife survives to him.   That single circumstance was decisive of the case in his favor, and it may rest upon that as an unquestionable principle.

The case of Lowry *v.* Houston, 3 How. was also one in which the husband was the survivor.   The right of the wife, too, accrued after her marriage, and the husband sold the slaves during the coverture.   Here, then, were three distinct grounds on which the decision was very properly in favor of the vendee of the husband, not one of which touches the point of controversy in this cause. The survivorship, the accrual of the right after the marriage, and the sale by the husband during the coverture, was each according to principles previously stated, sufficient to clothe him with the title.

The case of Scott *v.* James, 3 How. 307, very nearly resembled this, as it was a contest growing out of the will of the first husband, between those claiming under the second, and the third husband.   The construction of that will has already been adverted to in this opinion.   The case turned exclusively upon the question of fact, whether the second husband had reduced the property to possession.   The court say that James, the second husband, "took possession of the property on his marriage, continued in possession until his death, and claimed it in his own right by virtue of the

marriage. This was undoubtedly the highest act of ownership, and a sufficient possession to consummate his right. It was all that he could have done; because by the will the property was to be kept together, and not divided until the daughter became of age, or married." The decision was in favor of those claiming under the second husband. But no one can doubt but that the decision would have been different, if the second husband had done none of those things which were in that case deemed the highest acts of ownership, and if the rights of those claiming under him had rested, as in this case, upon the fact of the inter-marriage alone. The right to recover in that case was placed upon the ground, that the husband had reduced the property to possession, so far as it was susceptible of such reduction.

The only remaining case is that of Magruder and Nichols *v.* Stewart, 4 How. 204. The right to the negroes sued for accrued during the coverture; the wives of the two plaintiffs were living; they had a joint right to the slaves; and the suit was brought by the husbands alone. It may be further remarked, that it was a suit against a person claiming to hold the slaves adversely. The circuit court was asked to charge the jury, "that if the right of action accrued during the coverture, the suit was properly brought in the names of the husbands alone." This charge was refused by the court, and the cause came up on that ground among others. This court, in accordance with the principles herein indicated, reversed the judgment upon this point.

These are the cases which have occurred in this court, none of which settle the principle involved in the present, according to the view we have taken of it. It may be observed, too, that neither Carter nor his representatives are parties to this proceeding, and that our judgment cannot preclude his rights.

The opinion of the probate court of Yazoo, upon the bill of review, denying the right of Martin Wade to the property in question must be reversed, and the report of the commissioners allotting his portion to him, must be and the same is hereby affirmed.

Judgment reversed.