## KELLY'S ADM'R v. KELLY'S DISTRIBUTEES.

1. The grant of administration confers upon the administrator *de bonis non* a legal title to the goods and chattels, rights and credits of the intestat e which were unadministered by his predecessor; and the husband of a sole distributee of the intestate, who has paid the debts of the estate, and taken possession of the personal property, cannot resist a recovery by such administrator by proving these facts.

Writ of Error to the Orphans' Court of Montgomery.

THE plaintiff in error filed his accounts and vouchers, as administrator, " which were examined and ordered to be filed for the examination of all concerned," and publication ordered as required by law. Afterwards, the plaintiff moved to amend his return, and inventory previously filed, so as to show, that no goods or chattels of the intestate subject to administration or distribution had come to his hands ; whereupon it was ordered that the amendment be allowed, if the truth of the suggestion be shown ; that an issue be made up to try the fact, "and that the *onus* of proof be on the administrator." An issue was accordingly made up, and submitted to a jury, to determine whether the slaves returned by the administrator were assets of the intestate's estate, and subject to administration as a part thereof. A special verdict was returned and submitted to the

court as the basis of such judgment, as might be proper. The jury found that the intestate died about the first of January, 1839, indebted about 115 dollars, and the expenses of her last sickness; that she left no brothers, and but one sister, Mary A. Lathrop, the wife of Benj. G. Lathrop. After the death of the intestate, her brother-in-law took possession of the slaves mentioned in the inventory, treated them as he did other slaves which were his own, and paid off the debts above mentioned. About four years after the death of the intestate, Mrs. Lathrop and her husband procured Lewis Owen to administer on intestate's estate, about the 3d June, 1843; that he pointed out to Owen three or four negroes as belonging to the estate of his intestate, but Owen never took possession of them. At the request of Lathrop and the plaintiff, Owen resigned the administration, and the latter was appointed in his stead, on the 11th December, 1843. Lathrop informed the plaintiff that he had paid the intestate's debts, and taken possession of the property; that there was some property, and he thought administration was necessary to perfect titles to the same. They further add that the slaves in the inventory mentioned, belonged to the intestate at the time of her death. It was adjudged by the court, that the slaves in question were liable to distribution, as the estate of the intestate; that the plaintiff's motion for leave to amend the inventory previously returned, be overruled, and that his account, as audited and reported, be allowed, &c.

J. A. ELMORE, for the plaintiff in error, insisted, that the statutes of Westm. 2, and 31 Edward 3, did not give to creditors a right of action against the ordinary, except for the amount of goods in his hands; the ordinary had no right to sue, nor had the next of kin a right to the surplus. [1 Plow. Rep. 277, 282; Swinb. on Wills, 233; 2 P. Wms. Rep. 441; 1 Wms. on Ex'rs, 236; 2 Id. 905; 1 Salk. Rep. 37; Carth. Rep. 376; 3 Binn. Rep. 560.] To remedy the defects of these laws, the statute of 22 and 23 Charles 2, was enacted. [2 Wms. Ex'rs, 905, et seq.; see also, Grimkie's Pub. Law of S. C; Clay's Dig. 168, 191.]

Where there is a sole distributee and no debts, or the debts have been paid, the next of kin may take without distribu-

tion. [1 Rich. Eq. Rep. 22-3 ; 1 Bail. Eq. Rep. 58 ; 1 Hill's Eq. Rep. 324 ; 1 Hill's Rep. (S. C.) 191 ; 4 Paige's Rep. 51; 10 Paige's Rep. 496.] In consequence of his possession, the marital rights of Lathrop attached, and the administrator is accountable to him, and not to the next of kin. [10 Pick. Rep. 104; 2 Bail. Rep. 464; 1 Bail. Eq. S. C. Rep. 487.] He is not excluded in consequence of his admission that the property was the intestate's at her death ; the South Carolina cases say, if the result was right, no administration was necessary to do what had been already done. [6 Ala. Rep. 894; 7 Id, 32, 589.] Administration cannot change the rights of the parties.

J. W. PRYOR, for the defendant. Lands pass to the heirs by descent as at common law. [Clay's Dig. 168, § 2.] Goods and chattels descend to, and are distributed among the heirs in the same manner as real estate. [Id. 191, § 1.] These statutes are to receive a reasonable construction. By the common law, the King was entitled to the personalty ; this right was yielded to the ordinary, and the title has since been granted to the administrator by statute. See the English statute of distributions ; Clay's Dig. 220, § 1 ; 223, § 11 ; 225, § 26.] If next of kin may take the personal estate, where there are no debts, what is to prevent them from suing to recover it—what length of time shall elapse before it can be presumed that there are no debts. [Pinkston v. Huie, *supra.*

Whenever administration is granted, it vests the property by relation, from the intestate's death. [1 Com. Dig. 466, Tit. Adm. B. 10 ; 1 Caro. L. Rep. 480, 492 ; 9 Mass. Rep. 337, 352 ; 12 Id. 309 ; 10 Pick. Rep. 463 ; 23 Id. 128 ; 2 Speers' Rep. 487.] And the next of kin cannot recover, either at law or in equity, without administration. [3. P. Wms. Rep. 348 ; 1 Rawle's Rep. 149 ; 4 Paige's Rep. 47 ; 2 McC. Rep. 168 ; 1 Caro. L. Rep. 480 ; 2 Speers' Rep. 487 ; 4 Liit. Rep. 263 ; 13 Wend. Rep. 453.]

It is not pretended that the husband is next of kin to his wife, and the authorities show the reverse. [3 Ves. R. 244; 14 Id. 372, 381 ; 3 Dess. Rep. 135, 155, 273.] To consummate his title to his wife's choses in action, he must have re-

duced them into possession during the coverture in the character of husband. [1 Wms. Ex'rs, 555-7; 3 Stew. Rep. 172, 375; 4 Stew. & P. Rep. 286; 1 Rich. Eq. Rep. 1, 5.] The special verdict does not show, that Lathrop had possession as husband, and his own act in pointing out the property estops him.

The cases cited by the plaintiff's counsel, upon the main point were in Chancery, and from South Carolina, with the exception of one from New York, where the intestate had been dead more than twenty years. These decisions are altogether inapplicable.

COLLIER, C. J.—We need not inquire whether the motion by the plaintiff in error to amend the inventory he had returned, should have been allowed; the questions arising upon the special verdict are—1st. Is the administrator entitled to the personalty, which belonged to his intestate, at the time of her death, and unadministered by his predecessor? 2d. Is the property in question subject to distribution according to the statutes which apply to intestacies?

It is enacted by the act of 1806, that if a person die intestate, or the executors named in the will, neglect or refuse to act, &c., administration of the goods and chattels, rights and credits of such intestate, or of such testator with the will annexed, shall be granted to the widow, or next of kin, or some of them; and in case of their refusal, then to the principal creditor, &c. [Clay's Dig. 220, § 1.] The same statute provides that an appraisement and inventory shall be made and and returned to the proper Orphans' Court. [Id. 223, § 11; 225, § 26.]

The descent of land in cases of intestacy is explicitly provided for, and it is then enacted, " When any person shall die possessed of goods and chattels, or personal estate, not bequeathed, the same shall descend to and be distributed among his or her heirs, in the same way and manner, that real estate not devised descends by this act : *Povided*, that the goods and chattels, or personal estate of any person deceased, whether testator or intestate, shall stand chargeable with the payment of all the just debts and funeral expenses of the deceased, and the charges of settling the said estate ; and after

the payment thereof, the surplusage in case of intestacy, shall be decreed by the Orphans' Court, one third thereof to the widow of the deceased person, &c." [Clay's Dig. 168, § 2; 191, § 1.]

We think it clearly inferable from these enactments, that the grant of administration conferred upon the plaintiff the goods and chattels, rights and credits of his intestate, which were unadministered. Such is the well established effect of the English statutes of a kindred character. This being so, it was competent for him to have maintained an action at law against Lathrop for the recovery of the possession of the slaves.

In Coons & Co. v. Nall's Heirs, &c. 4 Litt. Rep. 263, it was held, that a suit even in equity will not lie in behalf of the heirs of a dowress for the rents and profits of a dower estate ; although it was alledged that no will was made, or administration granted. In such case the right of action is in the personal representative, and a recovery by the heirs would not bar a suit by him, should one be afterwards appointed : *Further*, a suit for an account of the personal estate of the ancestor, must be brought by his personal representatives.

It has been often said, that the administrator represents the intestate in respect to the personalty, the legal right to which vests in him immediately on the grant of administration, and the grant relates back to the time of the intestate's death. Such is the effect of the authorities cited by the defendant's counsel upon this point. See Vaughters v. Elden, 2 Brev. Rep. 307. In that case, certain property of the intestate went into the distributee's possession without administration who sold the same to the defendant. After the death of the distributee, the plaintiff administered on the estate of the late owner of the property, and after demand, brought trover for its recovery. A verdict and judgment were obtained for the full value, embracing the increase of slaves, &c.; the court deciding that the distributee had no interest beyond the *mere equity* to have the residue after the payment of the debts, and that the legal estate was in the administrator.

In Bradford v. Felder, 2 McC. Ch. Rep. 168, it was determined that the next of kin to a decedent, cannot maintain

a suit in equity for the recovery of the property of an intestate's estate without administering, though he be exclusively entitled. If he take possession, and dispose of it, such disposition will be inoperative.

These decisions, it is insisted, are inapplicable to the case at bar, because the husband of the sole distributee of the intestate's estate, had taken possession of the property, and paid all the debts, so that no administration was necessary; and his possession will be referred to his rights as husband. To sustain this argument, the plaintiff has cited several cases in Chancery, from the South Carolina Reports. In Spann and wife v. Jennings et al. 1 Hill's Ch. Rep. 324, it was decided, that where the wife was entitled to the whole of the estate of deceased infants as their next of kin, and there being no debts, before her marriage took possession of the estate without administering, which after marriage continued with her husband, the husband was entitled to administration in right of his wife ; but as no debts were to be paid, or distribution made, administration would have been a "nugatory ceremony." If any other person had administered, the property could not have been removed from him. "By going into equity and showing that there were no debts, and that his wife was exclusively entitled, a recovery at law would have been restrained." To the same effect is Huson, et al. v. McMeekin's Adm'r, 1 Rich. Eq. Rep. 1.] Without stopping to inquire whether these cases correctly ascertain the law, it is enough to say, that they professedly proceed upon principles which are recognized in Chancery, and which it is admitted would not be administered in a court of law. In the latter tribunal, the party having the legal title must recover the possession of the intestate's estate, and when thus reduced into possession, (as we must intend it was in the present case,) it must be distributed according to the direction of the statute upon the subject. The Orphans' Court, though a peculiar, and to some extent an extraordinary jurisdiction, does not exercise the powers of Chancery. To ascertain who are the distributees, it must look to the parties at the time the distribution is ordered, where *legal rights* have not previously vested.

Here the husband had not such a possession as invested

him with his marital rights in his wife's estate, at least in a court of law; or if they ever attached, they were divested by the grant of administration, and the designation of the property as the estate of the intestate. Whether the husband's rights are such as to command the protection of equity, is not now a proper subject of inquiry—that question can be considered when it arises. This view is decisive of the cause, and the judgment must be affirmed.