## MILLER v. EATMAN, et al.

1. If a parent, before sending property home to his son-in-law, declares his intention that it is a loan, and not an absolute gift, and about the same time, and whilst he retains the possession of the property, makes his will, in which the same intent is declared, the will may be given in evidence to prove the intent.

2. Where one of several brothers and sisters, having title to personal property, dies in infancy, the remaining brothers cannot sue at law, to recover the property, until administration is taken out on the estate of the infant.

3. To maintain the action of detinue, the plaintiff must have the entire interest in the thing sued for, therefore three brothers and sisters cannot maintain detinue for slaves, given by the will of their grandfather to them and another, who is dead, and no administration granted on his estate.

Error to the Circuit Court of Greene.

DETINUE for four slaves, by the defendant in error, against the plaintiff in error.

Upon the trial of the cause, the plaintiff introduced an authenticated copy of the will of Stephen Bobbit, made in North Carolina, and dated 4th April, 1823, containing a clause, which was read to the jury, "I give and bequeath to my daughter Seley Montford, one negro girl named Linsey, and a boy named Jim, a feather bed and furniture, and cow and calf, during her life, and at her decease to be equally divided between her children, to her and her heirs forever;" and proved, that at the time the will was made, Seley Montford was the wife of Thomas J. C. Montford; that she died about fifteen or sixteen years before the trial of the cause; that she left four children, three of whom are the plaintiffs; that the fourth was a son, who died a minor six or seven years old, and there was no evidence that administration had ever been granted on his estate. It was further proved, that Stephen Bobbitt died in July, 1824, and that the slaves sued for are the children of Linsey.

77

The defendant introduced testimony conducing to prove, that Seley Bobbitt was married to Thomas J. C. Montford, in September, 1822, and that before the making of the will of Stephen Bobbitt, the new married couple had gone to house-keeping, about four miles from the residence of Stephen Bobbitt; and that from the time they so went to house-keeping, until the sale by T. J. C. Montford in 1828, to Moses Lewis, under whom the defendant claimed, the slave Linsey had always been in the possession of T. J. C. Montford.

The plaintiffs, by way of rebuttal, offered the deposition of one Harris Bobbitt, taken upon interrogatories, one of which was, Did you some short time before Stephen Bobbitt made his last will and testament, hear him say any thing in relation to certain property, which he designed to give his daughter Seley Montford? If yea, state what that conversation was. The defendant objected before the commission issued, to the competency of this interrogatory, and to the competency of any answer which might be given. The deponent answered, "I did. Some short time before Stephen Bobbitt made his last will, he came to my house, bringing with him, or speaking of a rough will, or memorandum, as how best to dispose of a part of his property, to his youngest daughter Seley, who had married with Thomas J. C. Montford, and he having no confidence in Montford, stated to me, how he should dispose of his property to his daughter, so that Montford should not make way with it, or spend it in any way. He finally concluded, he would not leave it in the power of any of his daughters' husbands, to spend any of his property, though he said he doubted none of them but Montford. The court overruled the objections to the interrogatory and answer, and permitted the answer to be read. There was also testimony offered by the plaintiffs, conflicting with that offered by the defendant, as to when the slave Linsey went into the possession of Montford, but none of the testimony showed, that it was later than a month after he went to house-keeping. That after the death of Bobbitt, he moved to Alabama and sold the slave to Lewis. There was no evidence that either Montford or his wife had any knowledge of

Miller v. Eatman, et al.

the conversation of Stephen Bobbitt with Harris Bobbitt, or of the making of the last will of the former.

The defendant insisted before the court, that the plaintiffs could not maintain this action, unless they had the entire interest, and that the interest of the brother who died in infancy, could only descend through his legal representatives, but the court refused so to charge the jury, but instructed them that the action was well brought.

The court further charged, that if, when a new married couple went to house-keeping, the father of the lady sent property home with them, the law would presume it to be a gift, unless there was a declaration, or act of the father, at, or about the time, showing it to be a loan, or otherwise limited estate. That to prevent such an act from so operating, there ought to be an open declaration, made by the father, at, or about the time, of the manner in which the property went into the possession of the son-in-law, but that the will of Stephen Bobbitt would be such a declaration, as would indicate his intention to confer such a limited estate, he being still in possession.

The defendant moved the court to charge, that the clause of the will in evidence was not such a declaration as would prevent the presumption of an absolute gift, in favor of the husband; which the court refused, and charged the jury, that if they believed from the evidence, that at the time of making the will, the father retained the possession of the slave in question, then the making of the will, in connection with the other evidence in the cause, tending to explain his intention, would be sufficient to repel the presumption of an absolute gift to the husband; to all which the defendant excepted, and which he now assigns as error.

J. B. CLARKE, for plaintiff in error.

1. An action of detinue cannot be maintained, unless the plaintiffs have the entire interest in the chattel sued for. [Bell and wife v. Hogan, 1 Stewt. Rep. 536; Hart v. Fitzgerald, 2 Mass. R. 509.]

2. The interest of one, of several joint owners of a chattel, is several; and does not at his death vest in the other part owners, even should they be his next of kin; but vests

in his personal representative. [Maury's Adm'r v. Mason's Adm'r, 8 Port. R. 211; Boyatt, &c. v. Kerr, 7 Ala. R. 9.]

3. A father, who sends property to a newly married daughter, cannot prevent the property from vesting absolutely as a gift, by making a declaration that he intended only a life estate; *a knowledge of which declaration was never communicated either to the daughter or the son-in-law.* [Hogan v. Bell and wife, 4 Stewt. & P. 286.]

4. But should a declaration made by the father, that he intended to vest only a life estate in property sent home to a newly married daughter in her, be obligatory on the daughter and her husband, so as to limit their rights; in a contest between the issue in remainder and a purchaser from the husband, such declaration would not be sufficient to defeat the purchaser from the husband. [Hill, et al. v. Duke, 6 Ala. Rep. 259; Collier and wife v. Poe, 1 Dev. Equity Rep. 55.]

5. If either of the two last points can be sustained, it follows that the objection to Harris Bobbitt's testimony ought to have been sustained.

WOMACK, contra.

1. That the minor who died at the age of six or seven years, should not have been represented in this suit. [See 3 Bacon's Abrig. 675; 2 Lomax on Ex'rs and Adm'rs, 514, 521; also 1 Williams on Ex'rs, 546-7; 2 Id. 1145; 2 Steph. Com. 77; 1 Chit. Pl. 12, 58; Watson's Partnership, (marg. page,) 364; Myers v. Wade, 6 Rand. 448; Murray v. Mumford, 6 Cowen, 441; see also Bethea v. McColl, et al. 5 Ala. 315.]

2. The declarations of the father and testator, made at or about the time of parting from the slave in question, and his making the will at or about the time of parting from said slave, were properly admitted, to show his intention. [See Olds v. Powell, 7 Ala. 652; Banks v. Hatton, 1 Nott & McCord, 221; Collier and wife v. Poe, Dev. Eq. 55.]

3. The charge of the presiding judge in the court below, was proper. [See Paul v. Meek, 6 Ala. 753; Thorndike v. City of Boston, 1 Metcalf, 242.]

ORMOND, J.—We think the principle stated in Olds v. Powell, 7 Ala. 655, governs this case.   A will not published, or made known to others, would not be evidence of an intention, not to give the entire estate, because to countervail the presumption which the law makes of a gift, where property is sent home to the new married couple, the declaration of a contrary intent should be open and clear, and not left to be inferred from doubtful or ambiguous circumstances, which the donor might avail himself of, or suppress at his pleasure. But we cannot perceive how the fact, that it was written down, as well as declared verbally, can alter the case.   The slaves being then in the possession of the donor, the fact of making the will, pursuant to the declared intent before the property was sent, is strong evidence of a fixed and settled purpose, not to give the son-in-law the entire estate.

The objection is urged, that a parent cannot by a parol declaration, create a remainder over, after the termination of the life estate.   We do not understand that to be contended for here, but that the will, considered as a declaration, was evidence, in connection with the verbal declarations made previous to the property being sent home, that the father did not intend to make a gift to the son-in-law.   It was then necessarily a mere loan of the property, the title remaining in the father, and at his death it passed according to the provisions of his will.   [Banks v. Hatton, 1 Nott & McCord, 221; Collier v. Poe, 1 Dev. Eq. 55.]

The case of Hill and Hill v. Duke, 6 Ala. 259, depends upon different principles.   Undoubtedly, in a case where the transaction was recent, or comparatively so, the question would be the same, whether it arose between the donor and donee, or between the former and a creditor, or purchaser from the latter; but after a long continued possession by the donee, in a controversy between his creditors and the donor, a subsequent gift might be inferred, especially in cases not affected by the statute of frauds.   Thus, in the case last referred to, this court says, "when such a loan is extended over a period of ten years, and no period is fixed for its determination, it is not too much to say, in a contest between a creditor and the donor, that a strong presumption to infer a subsequent absolute gift, is well warranted, even if the bail-

ment was originally designated as a loan between the parties themselves." Here no such presumption can arise, as the father died a short time after the property was sent home to the donee, leaving a will, by which he assumed the right to control it.

The remaining question is, whether this action can be maintained by the surviving brothers and sisters, without any administration upon the estate of the brother, who died in infancy. At common law, personal property did not descend to the heir, but was vested in the ordinary, and it was not until the 31st Edward 3, that the ordinary was required to grant administration to the friends of the deceased. Our statute law has also directed, who shall be entitled to administration, and how the surplus after the payment of debts, shall be distributed. From this it follows, that the legal title to the personal property of one dying intestate, can only be derived through an administrator. Although therefore, an infant of six years of age has no capacity either to make a will or to contract debts, yet as his personal estate does not descend to his heirs at law, no action can be maintained by them at law for its recovery, unless they can deduce their title through an administrator, in virtue of the statute of distributions. This was held by this court in Hogan v. Bell and wife, 1 Stewart, 536, and Boyett v. Kerr, 7 Ala. 9.

In courts of equity, where it is not necessary that the legal title should be vested in the plaintiff, an administration may be dispensed with, where the right is asserted by those who would be entitled to distribution, and where it is clear there are no creditors to be prejudiced. Such was the case of Bethea v. McColl, 5 Ala. 315.

But even these are exceptions to the general rule, which is the same in equity as at law.

To recover in the action of detinue, the plaintiff must have the entire interest in the thing sued for; either the absolute property with the right to the immediate possession, or a special property as in the case of a bailee. As therefore it appears, that one-fourth part of these slaves vested in the deceased infant, upon the death of his mother, his remaining brothers and sisters, though his distributees, can derive their title to it only through his legal representative; and as their

inability to do so is admitted on the record, they cannot maintain this action. This objection is purely technical, but so long as the distinction between the succession to real and personal property is permitted to stand upon its present footing, it must be recognized by the courts, although in this particular case, no possible injury could result from permitting the action to be maintained by the present plaintiffs. Whether it would be necessary for the administrator to unite with the others in the prosecution, is a question it would not be proper now to decide.

The authorities referred to on the subject of joint tenantcy, have no application here. "Let the judgment be reversed.

GOLDTHWAITE, J.—I concur in the result of reversing the judgment, but I think it should be reversed on both grounds. I fully concurred in what was said in Powell v. Olds, but I think the facts given in evidence here go greatly beyond that case. Undoubtedly declarations made by a parent about the subject matter of a gift to a daughter or any other child, are proper as part of the *res gesta*. But it is only on the ground that the gift is then the matter transacting. The making of a will is a different transaction altogether, and the *res gesta* attendant on that cannot in my judgment be connected with another and different transaction, to wit, the act of sending the slave home with the daughter. Each transaction is a different one, and, though either may be explained by declarations made at the time, the declarations attendant on the one, in my judgment, are not admissible to explain the other.