## VANDERVEER vs. ALSTON ET ALS.

1. Where a wife is the sole distributee of an estate, and the husband pays all the debts and takes possession of the assets without administration, claiming them as his absolute property by virtue of his marital rights, although the legal title is not thereby vested in him. yet he acquires such an equitable interest in the property as a Court of Chancery will protect as against those who, after the death of the wife, may seek distribution thereof as the next surviving kin of the intestate.

Error to the Chancery Court of Montgomery. Heard before the Hon. A. Crenshaw, chancellor.

THE bill in this case was filed by the plaintiff against the defendants in error, and makes in substance the following case Elizabeth Kelly died in 1838, intestate, possessed of several slaves and owing debts to the amount of $115 only. Benjamin G. Lathrop, who was the husband of a sister of the intestate and her sole distributee, immediately after the death of Mrs. Kelly, paid all the debts of the estate and took possession of the slaves, claiming them in right of his wife as his absolute property. After the death of Lathrop's wife, Lathrop, under the belief that it was necessary to perfect his title to the slaves, and with the view of accomplishing that object, procured Lewis Owen to administer on the estate of Mrs. Kelly, and pointed out the slaves to him as the property of the estate.— Owen, however, resigned in a short time after grant of administration, without having accomplished any act in execution of his trust. On the day that Owen resigned, the plaintiff in error, who had purchased the slaves from Lathrop, acting under the same belief and with a view to the same object that had influenced L., took out letters of administration *de bonis non* on said estate, and returned an inventory, embracing the slaves in question. Subsequently to these proceedings, the plaintiff filed his accounts for final settlement of the administration and distribution of the estate, and reported Lathrop as the sole distributee, whereupon the defendants in error came into court and suggested that they were the next of kin and entitled to the property, &c. Upon this state of facts the plain-

tiff resorted to Chancery for relief, but the Chancellor, being of the opinion that there was no equity in the bill, dismissed it, and his decree dismissing the bill is now assigned as error.

ELMORE and BELSER, for plaintiff in error :

1. At common law, neither creditors nor next of kin were entitled to the personalty of an intestate, and to remedy these evils the statutes of Westminster II., of 31st Edward III., and of the 22d and 23d Charles II. were enacted. Gresbrook v. Fox, 1 Plowd. 277 to 282; 1 Williams on Ex'rs, 236; 2 ib. 905; Hughes v. Hughes, Levinz, 533; Edwards v. Freeman, 2 P. Wms. 441.

2. These English statutes are of force in South Carolina, and administration is there required, and under these statutes, where there is *a sole distributee and no debts*, or the debts have been paid, and the property is reduced to possession, it is a vested interest, which cannot be defeated by subsequent administration, but will be protected in a Court of Equity. Henson v. Wallace, 1 Richardson's Eq. 22; Spann v. Jennings, 1 Hill's Eq. (S. C.) 324; Walker v. May, 1 Bailey's Eq. 58; Grimke's Public Laws, S. C., 81, 491. The same principle is recognised and acted on in Bogart v. Furman, 10 Paige, 496. Our statutes are more favorable to the distributees in terms, but it is possible may be construed in the same manner, and our own court has recognised the same principle. Clay's D. 168, § 2,—191, §1,—220, § 1; Eastman v. Miller, 11 Ala. 614; Bethea v. McColl, 5 Ala. 315.

3. Vanderveer is not estopped by his admissions on the records of the Orphans' Court, whatever may be his rights. Lefond v. Ricord, 1 Bailey's Eq. 487; Moore v. Hitchcock, 4 Wend. 292; Gamble v. Gamble, 11 Ala. 966; 7 Ala. 185.

FAIR & PRIOR, for defendants.

CHILTON, J.—In Kelly's Administrator v. Kelly's Distributees, 9 Ala. Rep. 908, it was held, that the grant of administration confers upon the administrator *de bonis non* a legal title to the goods and chattels, rights and credits of the intestate, which were unadministered by his predecessor; and a husband of the sole distributee of the intestate, who has paid

the debts of the estate and taken possession of the property, cannot resist a recovery by such administrator, by proving such facts. In that case, which came up on a writ of error to the Orphans' Court, this court further held, that the possession of Lathrop, the husband, who had paid the $115 which was due from Mrs. Kelly's estate, did not invest him with his marital rights in his wife's estate, *in a court of law*, and that if they ever attached, they were divested by the grant of administration and the designation of the property as the estate of the intestate. This decision clearly settles that *at law* Lathrop's possession and payment of the $115 due to creditors of Mrs. Kelly, the intestate, did not vest in him a title, and the question now presented is, whether these facts vest him with such an interest as will defeat *in equity* the claim of the heirs at law of Mrs. Kelly.

Our statutes in respect to executors and administrators do not form a complete system, and they must be considered as amendatory of, and suppletory to the provisions of the common law. Where then the statute is silent, we must resort to the common law to deduce rules for our guidance. It is correctly said by the counsel for the plaintiff in error, that at common law neither the creditors nor next of kin were entitled to the personal property of the intestate. In ancient times, such property was seized by the king, who, as *parens patriæ*, caused it to be preserved and disposed of for the funeral expenses, and the benefit of the wife and children, or if there were none, then for those of his blood. At a later period, the ecclesiastical courts were invested with this branch of the royal prerogative, but as the residuum, after deducting the *partes rationabiles* of the wife and children of the deceased, was taken under the name of *piores uses*, and withheld from the creditors of the estate, in 1285 the statute of Westminister 2d (13 Edw. I. c. 19) was passed, enacting that the ordinary should be bound to respond to the creditors of the deceased as far forth as his goods would extend, &c. Still the residuum, after the debts were paid, was left in the hands of the ordinary, to be disposed of as should seem proper to him. This defect in the law was remedied in 1357 by the statute 31st Edw. III., st. 1, c. 11, requiring the deputation by the ordinary of the next and most lawful friends of the deceased to administer his goods, and making them lia-

Vanderveer v. Alston et als.

ble as executors to the ordinary. By the statute of 21 Henry 8, c. 5, passed in 1529, the ordinary was required to grant administration of the goods of the deceased to his widow or next of kin, or both, as he should think good, taking surety, &c. for the due administration of the goods, chattels and debts of the deceased. The security of the estate is further provided for by 22d and 23d Charles 2, c. 10. By the statute 29th Charles 2, c. 3, the husband who survives his wife is entitled to administration of her personal estate, which he did not reduce into possession during her life, and was authorised to retain the same to his own use, as though the statute of distributions had not been passed. We have thus refered, to the origin of administrators and the several English statutes upon the subject, that it might be seen how far the adjudications of the English courts and the courts of such of the States as have in substance similar statutory provisions are applicable to our statutes. It is considered settled law in England, that if the husband survive his wife, then he as her administrator is entitled to all her personal estate which continued in action or unrecovered at the time of her death; and although the husband die before he has reduced her property into possession, his next of kin will be entitled to it in equity. The wife's next of kin are entitled to administration *de bonis non* of her estate not received by the husband, but they are held as trustees for the next of kin of the husband. See Roper's Husband and Wife, 205; 22 Law. Lib. 130; 1 P. Wms. 378-381; 3 Ves. 297; 3 Atk. 326; 14 Ves. 372; 8 ib. 49; 3 Mad. 45; 1 Jac. & Walk. 388; Stewart v. Stewart, 7 Johns. C. Rep. 244; Wms. Ex'rs. 242, 910-11. In Tennessee, where they have no such provision as that contained in 29 Charles 2, the Supreme Court nevertheless hold, that the husband is entitled, not as next of kin, nor from the statute of distributions, but as husband and in right of the marriage as owner—Hannico v. Lard, 10 Yerg. 222-23; 1 Yerg. 418; and such is the doctrine held by several of the States. In this State, however, a different doctrine has from an early period prevailed. Mayfield v. Clifton, 3 Stew. Rep. 375; Bibb v. McKinley & Hopkins, 9 Port. 636; Johnson, adm'r, v. Wren, 3 Stew. 172. These citations are sufficient to show that, according to the settled doctrine of this court, the husband is not entitled to the slaves, unless he had

reduced them into possession during the life of the wife. We think, however, the facts of this case, as we shall presently show, are sufficient to vest in the husband the equitable right to them.

This bill is filed by the administrator of Mrs. Kelly, alleging that the husband's interest vested in him by purchase, and seeking to interpose that interest in his own behalf against the next of kin of his intestate, to enjoin the account which they demand of him as administrator. While the wife was living, (she being the sole distributee,) the husband took the property into his possession as husband, and having paid all the debts due from the estate of Mrs. Kelly, claimed to hold it as his absolute right, and to dispose of it as his own. We may lay out of view the subsequent acts of the husband in procuring the appointment of an administrator, under the mistaken view that it was necessary to the repose of the title that an administrator should be appointed. That Lathrop pointed out the property and caused administration to be granted on the estate cannot operate to estop him, except as to the parties who have been induced to act upon his representations and thereby to place themselves in a worse condition. This party would be the administrator, but he waives the estoppel, if there was one, and insists upon the complete equitable right of the husband. If the property in equity really belonged to the husband, the next of kin of Mrs. Kelly have not in any manner been prejudiced by the taking out of administration or the pointing out the property as belonging to the estate. The bill must be taken as true on the motion to dismiss for want of equity, and the proceeding insisted upon, as showing that the property belongs to the estate, is therein charged to have been instituted through mistake, and for the purpose of confirming the title of the husband, and not of destroying it.

Now, after the payment of the debts due from Mrs. Kelly's estate, the property which remained belonged to Lathrop in right of his wife. He paid the debts and took the property, but failed to administer. He did not thereby acquire the legal title to the property, for this can only be acquired by and through an administration; but did he not acquire a complete equity in it? There is no controversy about his right to it, had he paid the debts in due course of administration, and

thus asserted his marital rights over it. Besides representing his wife who was next of kin, the statute gave him the right to the administration. The objection is, that he did not pursue the form which the law has marked out, so as to make his title complete, and that as the administrator has the right at law to recover, the Chancery Court has no power to arrest the action of the Orphans' Court, but that the property must be distributed among the next of kin living at the time of the distribution. In other words, that the possession of Lathrop, the husband, was unauthorised by law, and tortious as against the administrator, the grant of whose letters related back to the death of the intestate, and cannot therefore give him an equitable title.

It is very clear that in such case no one could be damaged but the creditors of the intestate, and the bill charges, all these have been fully paid off and satisfied, and hence the case is not distinguishable in principle from one where there are no creditors. In such case, it seems to me that administration would be a useless formula, as was held by the South Carolina decisions referred to by the counsel for the plaintiff. See also the cases of Bethea v. McCall, 5 Ala. Rep. 315, and Miller v. Eastman, 11 Ala. Rep. 614, where a similar doctrine is countenanced. In the case last cited, the court say: In courts of equity, where it is not necessary that the legal title should be vested in the plaintiff, an administration may be dispensed with, where the right is asserted by those who would be entitled to distribution, and where it is clear that there are no creditors to be prejudiced. Such was the decision of Bethea v. McCall, 5 Ala. Rep. 315. In Henson v. Wallace, 1 Rich. 22, the former adjudications are reviewed, and the doctrine is laid down that it is unnecessary in cases where there are no debts and a sole distributee, to have an administration upon the estate, but that in equity the title will vest. In Spann v. Jennings, 1 Hill's Ch. Rep. 324, Chancellor Harper, upon the authority of Marsh v. Nail, previously decided by Chancellor Desaussure, held the same doctrine. " To what purpose," says he, " should the husband have administered? There were no debts to pay, and no distribution to make. That would have been going through a mere nugatory ceremony. Or if any other person had administered, could the property have been

recovered from him? No. By going into equity, and showing there were no debts, and that his wife was exclusively entitled, a recovery at law would have been restrained." The justness and reasonableness of this doctrine certainly commend it to our approbation.

In this case, the creditors make no complaint; they are, as we have said, satisfied. The collateral relatives of Mrs. Kelly had no right to complain; for none of the property was going to them. So that unless some principle of public policy was violated in taking possession without administration, the husband by his possession became vested with the equitable right to the slaves in controversy; and although at law his marital rights did not attach so as to defeat a recovery by the administrator subsequently appointed, yet in equity he is the beneficial owner, and his claim must controvert the mere legal right of the personal representative. In case of a sole distributee, the claims of creditors aside, I see no principle of public policy requiring the party to push the property through the diminishing process of administration. The State asserts no claim to seize upon the property, as the king in ancient times was wont to do, that as *parens patriæ* he might dispose of it as he listed. Two questions only concern the chancellor in such cases—1st. Is the possessor the sole owner? 2d. Are there no creditors of the estate, and no charge upon the property? If he hold it thus free from all demands, he should not be required to deliver it to an administrator, that it might be delivered back to him less the expenses. This would be not only unjust, but a useless ceremony. 14 Ala. Rep. 802. Johnson & Co. v. Spaight, 14 ib. 27, is not opposed to this view. In that case there were several distributees, and the proceeding was at law to subject the husband's interest which accrued in right of his wife, to process of garnishment, before distribution. Having determined that Lathrop held the equitable title to this property, and that the fact, that he pointed it out as property belonging to the estate with a view of obtaining for his vendee a legal title, and not of parting with his equity, did not confer upon the persons, claiming to be the distributees of Mrs. Kelly, a right to the property, they not having been in any way affected by the proceeding,—it results that the complainant, who occupies the place of Lathrop, having

purchased his interest, is entitled to be protected in equity against the claims of the defendants, and the bill was therefore improperly dismissed.

Decree reversed and cause remanded.