Muscogee Lumber Company v. Hyer et al.—Syllabus.

Writ of Error to Circuit Court for Alachua county.
The facts of the case are stated in the opinion.

*E. K. Foster* for Motion.
*B. H. Thrasher, contra.*

---

THE MUSCOGEE LUMBER COMPANY, APPELLANT, VS. WILLIAM K. HYER, ET AL., TRUSTEES, APPELLEES.

1. The English rule, that a trustee, executor or administrator is not entitled to compensation for his care and trouble, unless an allowance is made in the instrument creating the trust, has been qualified in this country, and the converse principle is recognized and generally established.

2. The laws of this State allow to guardians, executors and administrators a compensation for their services, and in analogy, upon equitable principles, a reasonable compensation should be allowed to trustees for their services, care and responsibility incident to their position.

Appeal from the Circuit Court for Escambia county.
The facts of the case are stated in the opinion.

*W. A. Blount* for Appellant.

*E. A. Perry* for Appellees.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

In May, 1881, William K. Hyer and Albert Hyer, as Trustees of the bondholders of the Pensacola and Mobile Railroad and Manufacturing Company, together with the Muscogee Lumber Company, filed in Escambia county Circuit Court their bill against the said Pensacola and Mobile Railroad and Manufacturing Company to foreclose a trust mortgage on property of said company, made by the said company in April, 1873, to the said William K. Hyer and Albert Hyer, as trustees, to secure the payment of ninety bonds, of one thousand dollars each, issued by the said Pensacola and Mobile Railroad and Manufacturing Company, which bonds were held by the said Muscogee Lumber Company. Final decree was entered on the 14th July, 1881, providing that the property should be sold for cash or for the bonds and coupons of the defendants upon which the decree was rendered, except that so much of the purchase-money should be paid in cash as might be necessary to pay the costs and expenses of the suit.

The property was sold under the decree, and was purchased by the Muscogee Lumber Company for the sum of fifty-one thousand one hundred and seventy-four dollars and forty-six cents. The trustees, William K. and Albert Hyer, at the time of the sale filed a petition with the Judge of said court, asking compensation for their services as such trustees, as follows:

" Your petitioners, W. K. and Albert Hyer, respectfully

represent that they have served as trustees for the holders of the $90,000 of mortgage bonds of said defendant. That to-day, under a decree of foreclosure of the mortgage made to secure said bonds, the said defendants' mortgaged property has all been sold, and your petitioners' duties as trustees have terminated. Whereupon your petitioners pray to be allowed as part of the costs the sum of five hundred dollars for their services and responsibilities as such trustees, or such other sum as to your Honor may seem meet and proper," &c.

The defendants filed objections to the granting the compensation asked for in the petition, or any other compensation. Such further proceedings were had that the court ordered and decreed that the trustees be paid the sum of five hundred dollars out of the fund arising from the sale of the property, and that if no fund remained in the hands of the master for that purpose then the beneficiaries of the trust, the Muscogee Lumber Company who were the purchasers at the sale, should pay it.

From this decree the Muscogee Lumber Company appeals, and assigns the following error in the petition of appeal:

"The court below erred in decreeing in said suit to appellees against appellants as compensation to appellees the sum of five hundred dollars, or any sum."

The only question involved is whether W. K. and A. Hyer, the trustees named in the mortgage made by the Pensacola and Mobile Railroad and Manufacturing Company, were entitled to compensation, and if they were, is the amount allowed too much?

The English rule at common law is well settled that a trustee is not entitled to compensation for personal trouble and loss of time, unless an allowance is made in the instrument creating the trust. This rule is laid down in Robin-

son vs. Pett, 3 Piere Williams, 249, where the Lord Chancellor says: " It is an established rule that a trustee, executor or administrator shall have no allowance for his care and trouble; the reason of which seems to be, for that on these pretences, if allowed, the trust estate might be loaded and rendered of little value. Besides, the great difficulty there might be in settling and adjusting the *quantum* of such allowance, especially as one man's time may be more valuable than that of another, and there can be no hardship in this respect upon any trustee who may choose whether he will accept the trust or not." In Leading Cases in Equity, Vol. 2, Pt. 1, 4th Am. Edition, 514, in reference to this case of Robinson vs. Pett, it is said: " There is no rule better established than that stated by Lord Talbot in the principle case, viz: *that a trustee, executor or administrator shall have no allowance for his care and trouble.* It proceeds upon the well known principle, almost invariably acted upon by courts of equity, that a *trustee shall not profit by his trust.*"

The rule seems to have been in force in this country as a rule of the English common law at an early period. In 1814, Chancellor Kent in the case of Green vs. Winter, 1 John. Ch. R., 36, says: " The trustee is entitled to a liberal indemnity for his expenses and responsibilities incurred in the due and faithful execution of the trust, but he cannot demand *compensation* beyond what may be founded on the positive agreement of the party." * * * * " The four dollars a day for his time and expenses may be allowed on the ground of a fair indemnity ; but I cannot go further, without shaking the best settled principles in respect to the nature and character of the duties of a trustee. Nothing can be stronger or more explicit than the uniform language of the English Court of Chancery upon this point, or if I were even free from the weight of authority I should

hesitate greatly before I undertook to question the policy or wisdom of the rule." Again, in Manning vs. Manning, 1 John. Ch. R., 530, the same Chancellor says: "I return to the point before me, and I think it is not to be denied that the law is *settled* against the claim of a trustee to compensation. The decisions have remained steady and uniform for a century and a half, and the rule applies not to executors merely, but equally to trustees of every description." * * * * "It appears to be the practice in several of the United States to allow a commission of so much per centum to executors and other trustees. (1 Wash. R., 246; 4 Hen. & Munf., 415; 1 Munf., 159; 3 Binney, 457.) But this practice cannot be received here as authority, however respectable the source, for it is not founded upon any different construction of the English law, but upon local usages or statutes, which have confessedly changed the English rule. * * * It is the province of the legislative, and not of the judicial power, to change the law, and our Constitution has auspiciously declared that the common law of England (in which I include of course the equity system) shall continue the law of this State, subject to such alterations and provisions as the Legislature of this State shall, from time to time, make concerning the same." These decisions were founded upon the common law rule; subsequently the Legislature of the State of New York enacted a law by which guardians, executors and administrators were allowed a reasonable sum, in the discretion of the court, for their services over and above their expenses. In the matter of Roberts, a lunatic, 3 John. Ch., 42, the committee of the lunatic prayed for an allowance for compensation as such committee under such statute of 1817. Chancellor Kent thought the case within the equity of the statute, allowed compensation, and, at the same time, established a general rule allowing a per centum to guardians, executors and administrators.

Though the provisions of this statute confined in its terms the allowance of compensation to guardians, executors and administrators, yet, by an equitable construction, it has been extended to committees of the estates of lunatics and to trustees ; not only in the State of New York, but in most of the other States having laws similar to the one above mentioned for the compensation of guardians, executors, &c.

In Meacham vs. Sternes, 9 Paige, 398, decided in 1842, Chancellor Walworth says: " Upon a full examination of the subject, and in accordance with the principle of the decision of Chancellor Kent in the case *ex-parte* Roberts, before referred to, I have arrived at the conclusion that the trustee in this case, and other trustees similarly situated, are entitled to the same compensation for their services which is allowed by law in the case of executors, administrators and guardians. I am also pleased to find that the same view of this question was taken by the late Judge Washington, of the Supreme Court of the United States. In the case of Prevost vs. Gratz, in the Circuit Court of the United States for the District of Pennsylvania in 1818, the question arose whether a trustee was entitled to commission for his services in the discharge of his trust ; and, in delivering the opinion of the court, that distinguished Judge says : ' Without intending to meddle with the question whether a trustee is entitled to a commission upon general principles which prevail in courts of equity, we think he is so in this State under the equity of the act of Assembly which allows them to executors, &c. ; and such, we understand, has been the practice.' It may therefore be considered the settled rule, so far as the decision of this court can settle it, that in all cases of trust of this description, and all other express trusts of a similar nature, when nothing is said in the deed or instrument creating the trust

on the subject of compensation to the trustee for his personal services in the execution of the trust, and where there is no agreement on the subject for a different allowance, the trustee, upon the settlement of his accounts, will be allowed the same fixed compensation for his services, by way of commissions, as are allowed by law to executors," &c.; Ogden vs. Murray, 39 N. Y., 202; *In re* Schele, 53 N. Y., 263; Prevost vs. Gratz, 3 Wash. C. C. R., 434.

In Barney vs. Saunders, 16 Howard, 542, Mr. Justice Grier, speaking for the court, says: "In England courts of equity adhere to the principle, which has its origin in the Roman law, 'that a trustee shall not profit by his trust,' and, therefore, that a trustee shall have no allowance for his care and trouble. A different rule prevails generally, if not universally, in this country. Here it is considered just and reasonable that a trustee should receive a fair compensation for his services, and in most cases it is gauged by a certain per centage on the amount of the estate."

In Barrell & Al. vs. Ivey, 16 Mass., 221, the court say: "There is undoubtedly in the execution of most trusts much solicitude and vexation, which cannot be compensated by money, and any trustee must be supposed to understand this when he takes upon himself such a burthen. And it is for this reason probably that in England trustees are generally allowed nothing. * * * In this Commonwealth, however, executors are allowed a reasonable compensation, and there is no reason why trustees should not be. Indeed, it will probably be for the advantage of all who are concerned in estates held in trust that such compensation should be made, as more care and diligence may be expected and required where there is compensation." 12 Pickering, 183; 5 Pick., 161.

In Vermont the common law rule that no compensation will be allowed to the trustee, unless by express agreement,

never obtained. In Hubbard vs. Fisher, 25 Vermont, the court say: " All such officers are here expected to be paid, and may recover reasonable compensation in an action of assumpsit for work and labor and money paid," &c.

In North Carolina it is said that a trustee is entitled to commissions as compensation for his labor in managing the trust committed to him, though no provision be made for it in the deed of trust. 6 Ired. Equ., 228, 495; 5 Ala., 314; 25 Ala., 432.

In the case of Philips, Administrator, vs. Bustard, 1 B. Monroe, 350, the rule upon this subject is formulated as follows.: " The British rule has been extensively qualified, if not entirely exploded, by the local law and usages of our own Commonwealth, where tutors and curators, and executors and administrators are all entitled to reasonable compensation. Here, then, the civil law maxim, and all the other analogies which fortified the rule in England, have been abolished, and a converse principle has been recognized and established. Is there now, therefore, any sufficient reason here for applying a rule so harsh and unreasonable to the solitary class of cases denominated express technical trusts? We think not. For similar reasons the court of Pennsylvania, and of our parent State, Virginia, have decided that trustees may be entitled to compensation without any express direction or contract therefor. See 3 Binney, 457; 1 Wash., 246; 4 H. & Mun., 415. And this appearing to be intrinsically just, not forbidden by policy, and not only not inconsistent with any analogy in our local jurisprudence, but perfectly consistent with its complete harmony, we do not feel authorized to repudiate it and blindly adhere to the old English rule, the reasons for which, if ever good, are now altogether inapplicable in this age and country whenever it may be presumed that com-

pensation was expected, and seems to be reasonable and just." 8 B. Mon., 571.

The general current of authorities upon this subject seems to be in the same direction, and while in a few of the States the principle of compensating trustees as distinct from executors, administrators and guardians has not been adopted, yet the equitable rule of compensating them in the same manner, and for the same reasons, prevail in a large number of the States.

The laws of this State allow to guardians, executors and administrators a compensation for their services, and in analogy and upon equitable principles we know no reason why a trustee ought not to be allowed a compensation for the care and responsibility incident to his position.

In the month of April, 1873, these trustees were appointed by the Pensacola and Mobile Railroad and Manufacturing Company by their mortgage made to secure the payment of ninety thousand dollars in bonds then issued by them. It would seem from the decree that coupons were attached to the bonds, probably for interest, but when such interest was payable, if at all, we are not informed. The mortgage was foreclosed in 1881, and the appellants, who it also appears from the decree awarding compensation were the beneficiaries of the trust, bought the mortgaged property for the sum of fifty-one thousand one hundred and seventy-four dollars and forty-six cents. The trustees asked for compensation in the sum of five hundred dollars for their services and responsibilities, and the court allowed it. It was upon one fixed sum, of which the court had knowledge from the records on file, and it must have been cognizant of the duties, services and responsibilities of the trustees. It was not, therefore, necessary to refer to a master to determine, as there were no accounts to be examined, and it was in the discretion of the court to allow a reasonable sum.

The amount allowed would not seem to be extravagant, and we can see no reason to interfere with the decree upon the alleged error.

The decree is affirmed.