LYMAN RHOADES, *et al.,* v. BRENDA DIANA DUFF FRAZIER, *et al.*

169 So. 379.
Division A.
Opinion Filed June 30, 1936.

*Wideman, Wardlaw & Caldwell, Manley P. Caldwell* and *Malcolm Easterlin,* for Appellants;

*Sullivan & Donovan* (New York City), *Fred M. Valz* and *Robert Anderson,* for Appellees.

Brown, J.—The question presented by this appeal is whether or not the chancellor in the court below committed reversible error in making a certain order concerning the compensation of testamentary trustees.

Lyman Rhoades, as sole surviving trustee under the last Will and Testament of Clara Duff Frazier, and Harry A. Usher and John G. Jackson, as executors of the Will of Frank Duff Frazier, as deceased trustee under the Will of Clara Duff Frazier, filed in the Circuit Court for Palm Beach County, Florida, on October 31, 1933, a bill against Brenda Diana Duff Frazier, Ivy B. Spear, Evelyn D. Dodge, Helen D. Dodge and the executors of the last Will of

Frank Duff Frazier in his individual capacity, and Yale University. The main purpose of the bill was to render an accounting as to certain trusts created by the Will of Clara Duff Frazier and to obtain the approval of such accounts by the court.

The bill alleged that Mrs. Frazier died in June, 1926, a resident of Palm Beach, leaving a Will nominating a Trust Officer of the Equitable Trust Company of New York, Lyman Rhoades, and Frank Duff Frazier, her son, as executors and as trustees of certain trusts. The Will was duly probated in Palm Beach County and the named executors qualified there. In February, 1930, having completed the administration of the estate as executors, they were duly discharged as such, transferring to themselves as Trustees cash, securities, and jewelry, to administer in trust according to the will.

The will created three trusts of $50,000.00 each for the benefit respectively of Ivy B. Spear, Evelyn D. and Helen D. Dodge. Rhoades and Frazier were named as Trustees. Mrs. Frazier's Will also created a trust of certain jewelry for the benefit of her grandchildren.

Mrs. Frazier in her Will also created a residuary trust, later determined to be of the value of three million dollars. Her son, Frank Duff Frazier, was to receive the income therefrom during his lifetime, and thereafter her grand daughter, Mr. Frazier's daughter, Brenda Diana Duff Frazier, was to receive such income, with Yale University as contingent remainder man. Frazier and Rhoades were also named trustees of this residuary trust. They received the assets of such trust in February, 1930, and administered them until Mr. Frazier's death on June 21, 1933, after which Mr. Rhoades, the surviving trustee, continued such administration. After Mr. Frazier's death his will was probated

in Palm Beach County and Usher and Jackson qualified as executors.

There having been no judicial settlement of the accounts of the trustees of said trust, and Frazier's duties having terminated by his death, this suit was filed, and attached to the bill and made a part thereof was a statement of the trustees' accounts, showing all funds received and paid by the trustees of the several trusts during Frazier's lifetime and certain receipts and payments made by the surviving trustee subsequently. The accounts so filed comprised one hundred and eighty pages of the record. The amounts of compensation claimed for the trustees, and the method of computing the same, was set out in the accounts with reference to each trust respectively. The compensation so claimed amounted to approximately $1700.00 for the three small trusts jointly, and approximately $31,500.00 to each trustee for the residuary trust. The bill alleged that Rhoades, as surviving trustee, and Usher and Jackson as executors of Frank Duff Frazier's will are desirous of rendering to the court an account of the proceedings of such trust, to the end that the same may be judicially settled and allowed, and that a distribution of the balance of income accrued to June 21, 1933, on the residuary trust, may be directed to be paid to the estate of Frank Duff Frazier, and that the principal of the trust shall be directed and continued to be held in trust and the income thereon paid in accordance with the terms and conditions of the will of Mrs. Frazier and as the Court may direct, and that Rhoades as surviving trustee should be instructed by the court as to his powers and duties with reference to the payment of income to or for the account of Brenda Diana Duff Frazier until she shall arrive at the age of twenty-one years.

The prayer of the bill was that "the Court consider, de-

termine, adjust, judicially settle and allow the aforesaid accounts of said trustees; that all of the accounts of the trustees may be approved, ratified and confirmed; that the rights, shares and interests of the respective parties defendant in and to the property in the hands of the plaintiff, Lyman Rhoades, as Trustee, be determined and defined; and that this Court instruct and direct the plaintiff, Lyman Rhoades, as to the disposition to be made of the property in, and which may come into his hands."

All of the beneficiaries of the several trusts were made parties defendant and Brenda Watriss, the mother and general guardian of Brenda Diana Duff Frazier, an infant, was appointed her guardian *ad litem*. Decrees *pro confesso* were entered against the three beneficiaries of the small trusts, and answer was filed on behalf of the infant defendant which incorporated a motion to dismiss the bill. The executors of Mr. Frazier in his individual capacity filed an answer admitting the allegations of the bill and claiming certain balances of income in the residuary trust at the time of Mr. Frazier's death.

The cause was set down for trial before the Court and the evidence was taken in part before the Court and in part before a special examiner and on final hearing on June 29, 1934, a final decree was rendered which approved the plaintiff's accounts, denied the motion to dismiss the bill and gave the plaintiff all the relief expressly prayed for by the bill. However, the matter of the allowance of compensation was incidently involved in the case, as shown by the accounts filed, and considerable testimony was taken with reference to that matter. So the chancellor ruled on that point also: In paragraph nine of his final decree the chancellor held: "That no acceptance fee be allowed the trustees; and that, at this time, no additional compensation be

allowed the trustees for their administration of the principal of the trusts."

The chancellor added, in paragraph eleven, being the last paragraph of the decree; "The Court retains jurisdiction of this cause to enter such other and further orders in the premises as equity may require or to the Court may seem meet."

Considering that the Court had erred on this point, appeal was entered by the plaintiffs in December, 1934. The only portion of the final decree questioned by the assignments of error is that dealing with the trustee's compensation.

This suit is somewhat unusual in this jurisdiction. The instances in which trustees have voluntarily come into the courts of equity to obtain judicial settlement and approval of their accounts and the allowance of compensation for their services have been rare, but the propriety of such procedure under certain circumstances is recognized by the courts. 65 C. J. 897. Persuasive to this effect is the case of McHardy v. McHardy's Executor, 7 Fla. 301.

We have no statute providing for or fixing the amount of trustee's compensation. In the case of Muscogee Lumber Company v. Hyer, 18 Fla. 698, 43 Am. Rep. 332, this court held that the English rule to the effect that a trustee, executor or administrator is not entitled to compensation for his care and trouble, unless an allowance is made in the instrument creating the trust, has been qualified in this country and the converse principle is recognized and generally established. It was further held that inasmuch as the laws of this state allow to guardians, executors and administrators compensation for their services, by analogy and upon equitable principles a reasonable compensation

should be allowed to trustees for their services, and the care and responsibility incident to their position.

The record shows that Frazier and Rhoades were allowed and paid as executors' commissions for the handling of this same estate as executors, $224,779.86. This was in February, 1930, at which time they transferred to themselves as trustees the corpus of the estate. Appellee contends that as Rhoades and Frazier had received liberal commissions for acting as executors of this estate, they should not be allowed commissions as trustees for taking over the same assets in their capacity as trustees; that they can claim commissions on the same fund only once. In other words, appellee claims that the claim here made is in its essence, for an "Acceptance fee' and not for compensation for work done. They also point out that as to the claim of Frazier's executors, it amounts to a claim that they should have been paid $31,500.00 just for his taking hold of property as trustee, the income of which was to go to him; that if Frazier had been named as sole trustee he would not have been qualified to act as such on account of his beneficial interest. Appellants claim that these fees should be allowed for the services of the trustees in undertaking the responsibility and administering the trust for a period of approximately three and a half years; that is, from the time Rhoades and Frazier were discharged as executors and took over the assets of the estate as trustees up to the time of the death of Frazier, the fact that the deceased trustee was entitled to the income from the trust during his lifetime being immaterial.

Appellee also called attention to the fact that under an agreement with the bank Rhoades would have to pay over to the bank of which he was the trust officer whatever com-

pensation was allowed to him. We do not, however, regard that fact as material.

Counsel for both sides quote from the text in 65 C. J. 928, which reads as follows:

"Where funds are held by one in different fiduciary capacities he will not be entitled to more than one commission for performing a single duty which involves no additional labor or responsibility, but the fact that a trustee appointed by will has received compensation as executor or administrator does not deprive him of his right to compensation as trustee, provided the duties are separate, although an executor-trustee who has received more compensation than he was entitled to as executor will be denied additional compensation as trustee. Where, by the terms or true construction of the will, the two functions with their corresponding duties coexist, and run from the death of the testator to the final discharge, interwoven, inseparable, and blended together, so that no point of time is fixed or contemplated in the testamentary intention at which one function should end and the other begin, double commissions or compensation in both capacities cannot be properly allowed; but if the fair reading of the testamentary provision shows that at some time the executor is to take, hold, and manage the fund as trustee of a separate and separable trust beyond and distinct from the duties which the will discloses that he is to perform in his capacity as executor, and the separation or setting apart of the fund is made, or as a matter of law is to be regarded as made, then his right to double commissions follows as an incident. To entitle a person named in a will as executor and as trustee to double commissions he must have actually entered upon his duties as trustee, and, moreover, he is entitled to double commissions only on so much of the estate as he turns over to

himself as trustee. Double commissions will not be allowed where the change of capacity is purely constructive and unwarranted, or where a transfer from one trust to another was merely a matter of bookkeeping, and no physical transfer of assets was involved."

Appellees insist that the transfer of the corpus of the estate from the executors to the trustees, the executors and trustees being identical, was merely a matter of bookkeeping and no physical transfer of assets was involved.

It is well settled that where there is no express contract or statute regulating the compensation of trustees, the equity court is vested with a very large degree of discretion in the matter of allowing or refusing compensation or commissions to trustees, or in grading the amount as may be deemed equitable in the particular case. 28 A. & E. Encyc. of Law, 2d Ed. 1035; 65 C. J. 923.

Appellees also contend that the will of Mrs. Frazier cannot be said to have contemplated a definite separation of the duties of the trustees and executors; that the most that can be said of it is that it created two offices to commence instantly, filled by the same persons whose duties were largely interwoven, although in time the executors would be discharged after which the trustees would continue to act, but that there is nothing in the will to show that the testatrix had any idea of allowing such compensation as the appellants are seeking. The appellants contend with equal earnestness that the will, properly construed, made a complete separation between the duties and powers of Rhoades and Frazier as executors and their duties and powers as trustees.

The holding of the chancellor as to this feature of the case was final and conclusive only as to the "acceptance fee," which he held would not be allowed. No final ruling

was made as to the allowance of other or further compensation to the trustees. As to this, the chancellor said that "at this time, no additional compensation be allowed the trustees for their administration of the principal of the trusts." And by providing further in the decree that the court would retain jurisdiction of the cause "to enter such other and further orders in the premises as equity may require or to the Court may seem meet," the chancellor left open for future action the matter of allowance of compensation to the trustees for their administration of the corpus or principal of the trusts.

This narrows the problem before us to the one question as to whether the chancellor committed reversible error in disallowing the trustees' "acceptance fee." Our opinion is that he did not. By the term "acceptance fee," the chancellor evidently referred to that part of the exhibit attached to the bill (p. 194 transcript) wherein the trustees claim commissions of something over $62,000.00 "for receiving" from themselves as executors the assets of the estate, scheduled as amounting to $3,121,674.88, on which they had been allowed commissions amounting to $224,799.86 in their capacity as executors. This transfer of the cash and securities of the estate from themselves as executors to themselves as trustees did not involve any physical transfer, and might well be regarded as a mere matter of bookkeeping, so far as this matter of commissions or compensation was concerned. By employing the word "additional" in that part of the decree quoted from, the chancellor evidently considered that the trustees had, upon their discharge as executors, been awarded liberal compensation for their services in that capacity, both for administering the assets and for receiving and paying out, and that to allow them a commission as trustees for "receiving" from themselves as exec-

utors the assets of the same estate would be a mere "acceptance fee" and in the nature of a double commission, which under the circumstances it would be inequitable to award. Certainly there was no abuse of the discretion vested in the chancellor in so holding.

In so holding, we do not mean to intimate that no compensation should be at any time allowed for the care, work and responsibility of administering these trusts. The court below has not yet so held, and we will not make any anticipatory decision in that regard.

The trend of the decisions in other jurisdictions is very well summarized in the quotation hereinabove made from 65 C. J. 928, in support of which many cases are cited in the notes. See also the rather comprehensive annotation to the case of Re National City Bank, 259 N. Y. 497, 182 N. E. 153, 84 A. L. R. 662, beginning at page 667 of 84 A. L. R. In one of the cases cited it was said that the statement of the principles governing this question is comparatively simple, but their application has been a source of much controversy and litigation. This case illustrates the truth of that observation.

The decree appealed from is affirmed.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.